No. 39,690

STATE OF KANSAS, *Appellee,* v. CHARLES ROBERT TEESLINK, *Appellant.*

STATE OF KANSAS, *Appellee,* v. CLARENCE E. FREEMAN, *Appellant.*

STATE OF KANSAS, *Appellee,* v. HOWARD E. HILLS, *Appellant.*

STATE OF KANSAS, *Appellee,* v. HUBERT LEE WICKS, *Appellant.*

STATE OF KANSAS, *Appellee,* v. JACK ROBERT CARTER, *Appellant.*

(278 P. 2d 591)

Opinion filed January 10, 1955.

*Douglas Hudson*, of Fort Scott, and *James D. Fellers*, of Oklahoma City, Okla., argued the cause, and *Howard Hudson* and *Douglas G. Hudson*, both of Fort Scott, were with them on the briefs for the appellants.

*Charles C. McCarter*, assistant attorney general, and *Wendell D. Winkler*, county attorney, argued the cause, and *Harold R. Fatzer*, attorney general, and *Paul E. Wilson*, assistant attorney general, were with them on the briefs for the appellee.

*Richard L. Becker* and *Morris D. Hildreth*, both of Coffeyville, were on the briefs as *amici curiae* for the Kansas State Chamber of Commerce.

*Alex Hotchkiss*, of Lyndon, was on the briefs *amicus curiae* for the Kansas Motor Carriers Association, Incorporated.

The opinion of the court was delivered by

WEDELL, J.: In this criminal prosecution the five above designated cases were consolidated for trial in the district court and are likewise consolidated for appellate review.

The parties agree a decision in any one case will determine the judgment in all of them. A jury was waived and the actions were tried by the court. It found defendants guilty and they have appealed. Omitting caption and introductory language, the information in the first, the Teeslink case, alleged:

". . . that on the 17th day of October, A. D. 1953, in said County of Miami, and State of Kansas, one CHARLES ROBERT TEESLINK did then and there, UNLAWFULLY, drive and operate a certain truck tractor, to-wit: a 1953 GMC, Motor No. 302 8361, and semi-trailer upon the public highways of

Kansas and more particularly upon Highway No. 69, near Louisburg, Kansas, *in a manner not exempt under the laws of Kansas, without having said above described vehicle properly registered with the Kansas State Vehicle Commission,* all being contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State of Kansas." (Our italics.)

The actions were tried entirely on stipulated facts. In our view concerning the proper disposition of the appeal, it is unnecessary to set forth the voluminous stipulations or all the contentions of the parties. It is clearly apparent throughout the record, including the statement of the state's counsel, that the actions were filed and tried on the theory the statutes on which the state relied for conviction were valid, and that defendants' crime consisted in their failure to comply therewith. G. S. 1949, 8-127 requires the owner of a motor vehicle, trailer or semitrailer to obtain registration thereof before operating it upon any Kansas highway, with certain exceptions not here material. G. S. 1949, 8-149 prescribes the penalty for failure to comply with the requirements of the motor vehicle act. Punishment is by fine, imprisonment or both. The parties agree the prosecutions were instituted for failure to register the vehicles and to obtain and display Kansas license plates thereon. They all carried Oklahoma license plates. The vehicles were automobile transport carriers on which automobiles were loaded at Kansas City, Kansas, and delivered to points outside of Kansas. They were returning over Kansas highways to the terminal of the owner of the vehicles located at Kansas City, Kansas, at the time of the arrests. The question is whether they were exempt from registration in the vehicle department of our state highway commission and relieved from carrying Kansas license plates.

The principal statute now involved is G. S. 1949, 8-138. The pertinent part thereof reads:

"(a) A nonresident owner, except as otherwise provided in this section, owning any foreign vehicle which has been duly registered for the current calendar year in the state, country or other place of which the owner is a resident, and which at all times when operated in this state has displayed upon it the number plate or plates issued for such vehicle in the place of residence of such owner, may operate or permit the operation of such vehicle within this state without registering such vehicle or paying any fees to this state. . . . *Provided,* That any exemption granted in this section to nonresidents shall apply to motor vehicles owned by nonresidents only to the extent that the laws of the state in which such owner resides guarantees like exemptions and privileges to motor vehicles owned and operated by residents of Kansas, or to the extent that the proper authorities of the state in which such owner resides

grant exemptions or reciprocity of privileges to motor vehicles owned and operated by residents of Kansas: *Provided further,* That all officers in the state of Kansas charged with the enforcement of this act shall grant to all nonresident owners of motor vehicles privileges of operation within this state equal to the privileges granted in such foreign states to motor vehicles owned and operated therein by residents of Kansas."

Our motor vehicle reciprocity commission, over eighteen months prior to the instant arrests, had entered into an agreement with Oklahoma authorities whereby the vehicles in question, title to which was obtained in Oklahoma and which bore Oklahoma license plates, could operate in Kansas without being registered in the vehicle department of our state highway commission and without obtaining Kansas license plates therefor, and in which agreement Oklahoma granted the same privilege to the owners and operators of similar Kansas vehicles in Oklahoma.

Specifically stated, it is one of the state's principal contentions that the five vehicles owned by Auto Transports, Incorporated, which bore Oklahoma license plates were domiciled at the terminal of Auto Transports, Incorporated, at Kansas City, Kansas, and could not be operated under our law over Kansas highways from that terminal to points outside of Kansas or return to that terminal over Kansas highways without being registered in our vehicle department and without Kansas license plates being displayed thereon. In this particular connection the state directs attention to a provision in G. S. 1953 Supp. 74-4302 which prescribes the powers and duties of and restrictions on our motor vehicle reciprocity commission. That provision reads:

"*Provided,* That no rule or regulation of the commission created by this act shall affect motor vehicles domiciled in or licensed in the state of Kansas from complying with all the laws of the state of Kansas. . . ."

The state argues that commission, therefore, was without power to exempt these vehicles from registration and the duty to obtain and display Kansas license plates.

On this point defendants reason that since these vehicles are owned by a nonresident they should be held to be domiciled in Oklahoma City, which defendants contend is the residence of their owner. They direct attention to the stipulations which state the owner's principal place of business is Oklahoma City, Oklahoma, and that it is the place from which all the owner's business affairs are daily directed covering the entire area in which it operates.

They also assert the stipulated facts disclose our motor vehicle reciprocity commission has placed its operative interpretation on the domicile provision, contrary to that asserted by the state, for approximately a year and a half during which the vehicles have operated pursuant to the reciprocal agreement. In this connection another question intrudes on which the district court has not ruled. It is whether an earlier statute, to which we shall refer as a "lost statute," remains operative.

Defendants argue the legislature has indicated an intent contrary to that advocated by the state by its repeal of a former statute, R. S. 1923, 8-109, pertaining to registration of motor vehicles by nonresidents. It contained the following provision:

"Motor vehicles used wholly or partly in this state as service cars or for hauling freight or carrying passengers for hire, shall be held to be owned in this state, for all purpose of this act, if when not in use such motor vehicles are housed and kept within the state."

Defendants contend R. S. 1923, 8-109 was repealed by the 1929 legislature in House Bill No. 2, laws 1929, chapter 81, section 30. It is true it was so repealed. The legislature, however, later in the same session again repealed and amended R. S. 1923, 8-109, and in the amendment, the above quoted provision was retained. (See Senate Bill No. 48, laws 1929, chapter 82.) As so amended that statute seems to have appeared in our general statutes for the last time in the 1930 Supp. R. S. 8-109. In 1931 Supp. 8-109 the note of the revisor of statutes would lead one to believe that section, as amended by laws 1929, chapter 82, section 1, was repealed by laws 1929, chapter 81, section 30. The note reads:

"8-109. Amended L. 1929, ch. 82, § 1. Repealed L. 1929, ch. 81, § 30. (See § 8-138.)"

That note is wrong. As heretofore stated, laws 1929, chapter 82, was the amendment of R. S. 1923, 8-109, and it was enacted by the 1929 legislature after the passage of chapter 81. A mere inaccurate statement of the revisor of statutes, however, does not effect a repeal of a statute. (*Dunn v. Jones,* 143 Kan. 218, 53 P. 2d 918.) In the Dunn case it was said:

"The revisor of statutes does not presume to determine what statutes are rendered nugatory by later enactments, and what are not, and print some and leave others out. He makes cumulative supplements." (p. 224).

We find no ruling of the trial court on the question whether laws 1929, chapter 82, section 1, remains in force. This court is not

vested with original jurisdiction in criminal cases. Until the trial court rules on that question, it is not properly here for appellate review.

A matter pertaining to the trial court's interpretation of G. S. 1949, 8-138, previously quoted, probably should be noted. The court rules that section constituted no defense for a failure to obtain license plates for the reason there was no evidence Oklahoma was allowing Kansas residents to operate in that state "under the terms of that section." The ruling is erroneous. A reading of the first proviso clearly indicates it was not necessary Oklahoma should have a law similar to subdivision (a) of G. S. 1949, 8-138 in order to effect the exemption. The proviso is in the disjunctive and also permits the exemption if the proper authorities of the state in which the owner resides "grant exemptions or reciprocity of privileges to motor vehicles owned and operated by residents of Kansas." It was stipulated such a reciprocal agreement had been entered into between Kansas and Oklahoma.

Whether the residence of the owner of the vehicles is in Oklahoma presents a separate question.

One other matter concerning which defendants express their disapproval probably should be noted. They complain concerning the trial court's action in making findings of fact in a criminal case and for the further reason that the facts were all stipulated by the parties. It is sufficient to say findings of fact by a court in such a situation perform no proper function and have no effect on the facts stipulated by the parties.

What has been said heretofore pertains solely to the state's theory on which the trial was based, namely, that the statutes on which the state relied for convictions were valid and defendants violated them. The record presented here fails to disclose the state made any claim whatsoever during the trial that statutes involved contravened any constitutional provision. From the record it appears the question of the constitutional validity of our motor vehicle reciprocity statute under our state constitution was first injected into the lawsuit by the district court on its own initiative at the conclusion of the trial. The court thereafter held that statute invalid and the reciprocal agreement made pursuant thereto, void. Defendants seriously object to that procedure. They have filed no brief on the constitutional question. We do, however, observe they have approved the brief *amicus curiae* filed by other counsel in behalf of the Kansas Motor Carriers

Association in which it is argued the reciprocal statute does not contravene constitutional provisions.

In the light of the record before us we deem it unwise presently to consider arguments on the constitutional question or to treat other contentions advanced by any of the parties. Nothing said herein is to be construed as tending to indicate this court's views relative to the merits of those contentions. A careful consideration of the record as a whole convinces this court the judicial process of administering justice will be subserved best by remanding the cases for a new trial generally in harmony with the views herein expressed. It, therefore, is the order of this court that the district court grant a new trial generally in which the parties will have the right to introduce their testimony or to stipulate the facts anew, should they desire to do so.